## Case No. 6,933.

### HURST v. JONES.

[4 Dall. 353.]

Circuit Court, D. Pennsylvania. May Term, 1801.

EJECTMENT—FORMER SUIT—NON PROS—COSTS —TRIAL.

[This was an action by the lessee of Hurst against Jones.]

A former ejectment, between the same parties, for the same land, had been non pros'd; but the costs of suit remained unpaid. The defendant's counsel objected to the trial of the present ejectment, until the costs of the former were paid.

Mr. Rawle, for plaintiff.
E. Tilghman, for defendant.

---

## Case No. 6,934.

### HURST v. JONES.

[1 Wall. Jr. Append. iii.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1801.

PEDIGREE—HEARSAY.

1. The contents of affidavits made ex parte several years before to prove pedigree, are admissible as hearsay, even though what was said was in answer to inquiries made by a person interested to obtain a particular answer;—the affidavits having been made, apparently, in compliance with official requirement, and there being no evidence of any actual "controversy" on the subject.

2. The case is somewhat qualified by this circumstance: st.—that it was not quite clear whether the witness swore to the contents of the affidavits, or to conversations which preceded them, and on which they were founded.

In this action of ejectment [which had formerly been continued on account of the

---

1 [Reported by John William Wallace, Esq.]

non-payment of costs of the former action,—Case No. 6,933], the descent of one Frances Smith, through whom the plaintiff claimed, came into question; and to prove the descent, Lewis offered in evidence the deposition of one Morris, regularly taken in 1787. This person stated in his deposition that having, many years ago, made application to the land-office for a warrant of survey under the right of Frances Smith, the secretary refused to issue any warrant until the pedigree of said Smith should be fully made out; on which he, Morris, in order thereto, made inquiries of, and had many conversations with ancient people of reputation, and was by them informed, in the year 1768, as follows. (The deposition then purported to state, in exact phraseology, what five different persons had said respecting the genealogy in question, and proceeded): "The affirmant further saith, that he was present and saw the several deponents in the depositions hereto annexed, severally make and subscribe the same." Certain ex parte affidavits thus referred to, were annexed, made in 1768, by the same five persons (now dead) before mentioned; and contained, verbatim, what Morris stated that he heard them mention. The defendant, prior to 1768 (when the affidavits were made) was in possession of the land now in suit.

Mr. Lewis and M. Levy, for plaintiff.

The plaintiff's counsel did not allege that the affidavits annexed to Morris's deposition were evidence, nor did they offer to read them; but contended that Morris's deposition was admissible as hearsay.

E. Tilghman and Mr. Ingersoll, for defendant.

The defendant's counsel objected to its introduction. Admitting generally that hearsay was admissible as to pedigree, they contended that it must be mere hearsay; not attempted to be clothed in legal form, but such as was collected from casual, general conversation and information, not having relation to any particular cause, but made a long time ago, and before any dispute stirred. This was the decision in Strickland's Lessee v. Poole.[2] If made with a view of serving a particular end or an interested party, the mind is not pure and unbiassed. If in response to interrogatories formally administered, there is great danger of artifice, for the interrogatories may be built upon a knowledge of the witness' capacity to speak, and so adjusted as to draw forth all that is favorable to the inquirer, and to conceal every thing beside. If not evidence in themselves, how can the affidavits become evidence by another person's relating what they contain? The offer is an

2 1 Dall. [1 U. S.] 14. A short note, thus: "To prove pedigree, evidence permitted to be given of hearsay, a great while ago, before any dispute stirred."

ingenious attempt to introduce ex parte evidence; for Morris appears to have taken all his information from the affidavits. He does truly say that he had "conversations"; but what he says as to the hearsay is, totidem verbis, what the five affidavits contain. But however this be, you cannot free the evidence from one incurable fault: st. That all which Morris heard was in answer to his own inquiries upon the very point now in issue, and when he was interested to establish exactly what it is attempted to establish here. Besides: this sort of evidence is admitted only ex necessitate rei; and the necessity ought to shew its extent. Here, the defendant was in possession of the land when the affidavits were made; the plaintiff had notice, therefore, of the claim, and ought to have perpetuated the testimony in a regular way.

Before TILGHMAN, Chief Judge, and BASSETT and GRIFFITH, Circuit Judges.

TILGHMAN, Chief Judge. Is it clear that Morris's information is wholly derived from the affidavits? I think not. He says that he had several "conversations" with ancient persons and was informed &c. But regarding the case as the defendant's counsel view it, is that which is stated under the sanction of an oath, less persuasive or less likely to be true than the prattle of casual conversation? or is the truth of conversation rendered less probable by being afterwards sworn to? Suppose this case:—A person, hearing another giving an account of the lineage of one whose pedigree he wishes to establish, thereupon asks that other to go and swear to it. Is the statement, when sworn to, rendered less probable? I am not aware that any court has decided that the only declarations admissible are those dropped in passing conversation; nor do I see that the value of the declaration is essentially impaired because responsive to inquiry, or even to interested inquiry; provided no controversy has been stirred. Suppose, that being interested to know my descent, I go to an aged friend and ask him such and such questions, and he tells me what he knows: is not this hearsay, and admissible? subject of course to the restriction which I have named, that it must be made before controversy moved.

For the rest, I do not see that any controversy had been stirred in 1768, when these affidavits were made; and I therefore think that Morris's deposition should be submitted to the jury. Under the court's direction, they will decide upon its credibility and weight.

GRIFFITH, Circuit Judge. I agree with the chief justice. Hearsay is admissible when made ante litem motam. That is this case. The present suit, it is admitted, was not stirred when the affidavits were made;

nor, in fact, were they made in any controversy properly so called. The secretary of the land office, it would appear, wanted a chain of title produced for his own satisfaction. The rules of his office probably required that the evidence of an applicant's title to a warrant should appear among the records; and Morris produced such evidence. So far as appears, there is no dispute nor doubt as to the descent; nor was there any opposing claimant of the warrant. I infer that the affidavits were made in compliance with the technicality and routine of office. They are, then, nothing more nor less than sworn declarations ante litem mortam. I do not see that the jurat destroys their credibility; for if that which is dropped in the laxity of conversation be credible, why ceases it to be so when reduced to form, and sworn to after calm, solemn and thoughtful recollection?

The case from 1 Dall. [1 U. S.] 14, does not conflict with our opinion; for that case is inclusive rather than restrictive. In short, while I have always admired the wise sentiment of Lord Talbot, that it is better to suffer a particular mischief than a general inconvenience; and feel in great strength, that the rules of evidence are founded upon large, general principles never to be broken away by the hardness of circumstances, I must yet admit, that in excluding this deposition we should narrow a rule of law beyond what is found in precedent. I may add, at the same time, that I should not be disposed to go greatly further than we do in this case.

BASSETT, Circuit Judge. If we give to the deposition that favourable interpretation which in support of probable intent human language may reasonably claim, it will by no means appear that Mr. Morris records only what is found in the affidavits. On the contrary; he had been inquiring in regard to the subject; "had many conversations with ancient people;" and as he might remember generally that the essence of what he learned was accurately set forth in their affidavits, we can understand why he presents documentary language (if it be the fact that he does so) rather than the less accurate recollections of an exhausted memory. I agree with the chief justice and my brother on the other points. In 1768, when the affidavits were taken, there does not appear to have been what, in the understanding of the law, is a "controversy stirred;" and though I was, at first, much oppressed by the argument that what Morris heard was in answer to his own inquiries made on the very point now in question, and with an interested view; yet I think, upon the whole, that as the witnesses must be presumed to have been indifferent, as they cannot be regarded as officious volunteers; what they stated is not to be rejected purely because it was in answer to inquiry, or be-

cause (being, doubtless, desired so to do) they attested with their oath what they had said in conversation. The evidence ought to be received; but is open, of course, to observation from the court. Depositions received.